**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

JOHN DOE,                      :

                           :    CASE NO. 2:20-cv-04972

        Plaintiff,        :

                           :    JUDGE MICHAEL H. WATSON

    v.                     :

                           :    MAGISTRATE JUDGE CHELSEY M. VASCURA

KENYON COLLEGE,       :

                           :

        Defendant.       :

---

## DEFENDANT'S OBJECTIONS TO NONDISPOSITIVE PRETRIAL ORDER (Doc. 58)

---

Pursuant to Fed. Civ. R. 72(a), Defendant Kenyon College ("Kenyon" or "Defendant"), by and through counsel, files these objections to the nondispositive pretrial discovery order issued August 31, 2021, Document 58, following a telephonic discovery conference. Specifically, Kenyon respectfully objects to the ruling that an admission request by Kenyon of Plaintiff John Doe is not relevant to Kenyon's defenses because the ruling is clearly erroneous in that it impermissibly limits Kenyon's ability to defend itself against allegations and causes of action raised in Plaintiff's Second Amended Complaint. Kenyon asks this Court to modify the order to reflect that Kenyon's admission request is relevant and order Plaintiff to answer the admission request. A Memorandum in Support is attached.

Respectfully submitted,

/s/ *Erin E. Butcher*
JOSHUA D. NOLAN* (0084592)
   **Trial Attorney*
Bricker & Eckler LLP
1001 Lakeside Avenue E.
Cleveland, Ohio 44114
(216) 523-5405
(216) 523-7071 (facsimile)
jnolan@bricker.com

ERIN E. BUTCHER (0087278)
Bricker & Eckler LLP
100 S. Third Street
Columbus, Ohio 43215
(614) 227-2303
(614) 227-7714
(614) 227-2390 (facsimile)
ebutcher@bricker.com

16929516v4

## MEMORANDUM IN SUPPORT

### I.    Introduction

After Kenyon found Plaintiff responsible for engaging in dating violence and nonconsensual sexual intercourse with another student, his former girlfriend Jane Roe, in violation of Kenyon's Title IX Policy, Plaintiff initiated this lawsuit under Title IX and Oho contract law. His Title IX claims against Kenyon include erroneous outcome, deliberate indifference, and selective enforcement. Throughout Plaintiff's Second Amended Complaint, he alleges that the two Kenyon Title IX investigators were incorrect in finding his information to be less credible, that they engaged in a series of unreasonable and unsupported factual findings and conclusions based on the information provided, and that the investigators' process and decision making was so clearly erroneous that it could only have resulted from gender bias by the investigators or that they engaged in an arbitrary and capricious process.

Specifically, with regards to the nonconsensual sexual intercourse claim, Kenyon's investigators found Plaintiff violated Kenyon's Title IX Policy, in pertinent part, for (1) engaging in sexual intercourse with non-party Jane Roe between 12:15 a.m. and 12:45 a.m. on September 14, 2019, (2) while Jane was incapacitated and unable to consent, and (3) while Plaintiff was aware or should have been aware of Jane's incapacitation.  During the Title IX investigation, Plaintiff did not sit for an interview and refused to answer questions about what happened between 12:15 a.m. and 12:45 a.m. on September 14, 2019, submitting written statements only, and in those written statements, Plaintiff stating that he would neither confirm nor deny that he had sex with Jane during that time period, stating (without any detail) that Jane was not incapacitated, and providing only details of what occurred only after 12:45 a.m. on September 14, 2019.

16929516v4

To reach the conclusion that Plaintiff had sex with Jane between 12:15 a.m. and 12:45 a.m. on September 14, 2019, Kenyon's investigators weighed the evidence in the record by a preponderance of the evidence. This evidence included Jane's interview statements, witness interview statements, other evidence in the record, and Plaintiff's written statements. The investigators used this same process to reach the determinations that Jane was incapacitated when Plaintiff had sex with her and that Plaintiff was or should have been aware of Jane's incapacitation. Plaintiff filed this suit arguing Kenyon's Title IX investigators got it wrong: that what the investigators concluded about what happened between 12:15 a.m. and 12:45 a.m. on September 14, 2019 was based on a biased process and that they made incorrect credibility assessments against Plaintiff on the premise that Jane was telling the truth.

Responding to this lawsuit, Kenyon issued written discovery requests and sought documents from various entities, including information from Plaintiff's drug and alcohol rehab center, which he attended after he withdrew from Kenyon and during the Title IX investigation. Specifically, Kenyon sought information about what Plaintiff reported about sex with Jane.

On June 24, 2021, the Magistrate Judge held a discovery conference during which counsel addressed the issue of access to information about whether Plaintiff admitted he had sex with Jane. Plaintiff stated, through counsel, for the first time, that he was not challenging the investigators' conclusion that he engaged in sexual intercourse with Jane Roe between 12:15 a.m. and 12:45 a.m. on September 14, 2019 for his erroneous outcome claim. Following the conference, Kenyon issued a request for admission memorializing that Plaintiff was not challenging the investigator's conclusion that he and Jane had sex between 12:15 a.m. and 12:45 a.m. on September 14, 2019. Kenyon issued two related requests for admission:

## ANSWERS TO REQUESTS FOR ADMISSIONS

39. Admit that John Doe's erroneous outcome theory alleged in his Second Amended Complaint is not based on the assertion that John and Jane Roe did not have sex on September 14, 2019 between 12:15 a.m. and 12:45 a.m.

    **ANSWER**: Admitted.

40. Admit that John Doe and Jane Roe had sex between 12:15 a.m. and 12:45 a.m. on September 14, 2019.

    **ANSWER**: Plaintiff objects on the basis that this request seeks information that is not relevant to either party's claims or defenses.

Plaintiff admitted that he was limiting his Title IX erroneous outcome claim by not challenging the investigators' conclusion regarding sexual intercourse between 12:15 a.m. and 12:45 a.m. on September 14, 2019. But this request for admission was specific to one of Plaintiff's causes of action and did not mention or refer to Kenyon's affirmative and legal defenses. For example, Kenyon is entitled to show that the investigators had in fact made decisions that were reasonable and the information and evidence collected by the investigators did not cast an articulable doubt on the accuracy of the outcome or a causal connection between a flawed outcome and gender bias, as required under an erroneous outcome claim. *Doe v. Cummins*, 662 F. App'x 437, 542 (6th Cir. 2016) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2nd Cir. 1994).) In response to the related request for admission (in which Plaintiff was asked to admit that he engaged in sexual intercourse with Jane Roe), Plaintiff responded that it wasn't relevant to his defenses, or the defenses of Kenyon.

On August 31, 2021, the parties had an oral discovery conference with the Magistrate Judge seeking a determination as to whether or not the Plaintiff's assertion that whether or not he had had sexual intercourse with Jane Roe was not relevant to any of his claims or Kenyon's defenses was appropriate. The Magistrate Judge's order provides, in pertinent part:

3

16929516v4

> (1) Plaintiff need not amend his answer to Defendant's Request for Admission No. 40, which asked him to admit that he and Jane Roe had sex between 12:15am and 12:45am on September 14, 2019. Plaintiff's relevance objection is valid because Plaintiff does not dispute Defendant's Title IX investigation finding that he and Jane Doe had sex that night; therefore, this request seeks information that is not relevant to either party's claims or defenses pursuant to Federal Rule of Civil Procedure 26(b)(1); and

(Doc. 58.)

The Magistrate Judge, in her minute order, memorialized that Plaintiff did not challenge the investigators' conclusion that he had engaged in sexual intercourse with Jane Roe. However, the Magistrate Judge found that it was not relevant whether Plaintiff admitted to having had sex with Jane between 12:15 a.m. and 12:45 a.m. on September 14, 2019. The order has large ramifications on Kenyon's ability to defend itself against Plaintiff's claims.

Kenyon recognizes that the Magistrate Judge's ruling was likely based on the very narrow grounds on which the discovery conference was framed by Kenyon's counsel. However, the framing of this case and the clearly relevant nature of Plaintiff's admission that the investigators got it right on this issue requires a reconsideration of the discovery order. Requiring Plaintiff to answer whether he had sex with Jane shows that the investigators were correct in their analysis on that point. This is clearly relevant to both of Kenyon's defenses to the erroneous outcome, deliberate indifference, selective enforcement, and breach of contract claims on which Plaintiff is seeking monetary damages from Kenyon. Kenyon must have the ability to point to this change in Plaintiff's theory. Whether Plaintiff admits that the investigators did their job correctly on this point is clearly relevant in this case. While Plaintiff may not now consider whether or not he admits he had sex with Jane Roe to be relevant, this should not limit Kenyon's use of the fact that Plaintiff's admission that the investigators were correct in their analysis. Such an outcome would be clearly erroneous and prejudicial to Kenyon.

## II.     Statement of Relevant Facts

As indicated above, Kenyon conducted a Title IX investigation into claims made by non-party Jane Roe that Plaintiff engaged in sexual intercourse with her while she was incapacitated. Kenyon's assigned Title IX investigators interviewed Jane, witnesses, gathered evidence, and, because he decided not to sit for an interview or answer the investigator's questions, Plaintiff submitted written statements to the investigators that they also considered.   Through the investigation, Kenyon's investigators were able to narrow the time period during which Jane's allegations of sexual misconduct occurred to between 12:15 a.m. and 12:45 a.m. on September 14, 2019.

Kenyon's investigators gathered and weighed by the preponderance of the evidence interview statements of Jane, witnesses, other evidence, and written statements submitted by Plaintiff to determine that, between 12:15 a.m. and 12:45 a.m. on September 14, 2019, in Plaintiff's apartment, that (1) Plaintiff and Jane had sex, (2) while Jane was incapacitated, and (3) Plaintiff was or should have been aware that Jane was incapacitated and unable to consent.  This evidence included reports by Plaintiff's friends that Plaintiff told them he and Jane had had sex the night of September 13-14, 2019. Jane reported that she did not remember having sex with Plaintiff that night and only first thought they had had sex because Plaintiff told her they had had sex.  Other witnesses reported they heard Plaintiff say he "raped" Jane.  Jane reported that she realized later the morning of September 14, 2019 that she was missing undergarments from her body, thought someone else had dressed her, and was experiencing non-menstrual vaginal bleeding and pain.

During the interview process, Plaintiff, through his counsel, submitted statements neither affirming nor denying that he had had sexual intercourse with Jane between 12:15 a.m. and 12:45

a.m. on September 14, 2019.  Accordingly, Kenyon's investigators had to reach a conclusion based on the evidence they gathered to determine whether Plaintiff and Jane had sex during that time period and they concluded that Plaintiff and Jane had sex.  Plaintiff provided written statements to Kenyon's investigators, without description, that Jane was not incapacitated the night of September 13-14, 2019.  Plaintiff relies upon a video of Jane speaking with a Knox County Sheriff's deputy.  In the video, taken after the deputy was dispatched at 1:07 a.m. on September 14, 2019, Plaintiff alleges Jane was coherent and therefore could not have been incapacitated earlier in the night.  Plaintiff appears to claim that this evidence should be sufficient to exonerate him and that it is therefore irrelevant to have to admit that he had sex with Jane.  Plaintiff appears to claim that if he does not challenge now, without amending his allegations against Kenyon, the conclusion reached by Kenyon's investigators that he and Jane had sex, then it is irrelevant whether he admits he had sex with Jane for his erroneous outcome claim.  This is Plaintiff's theory and he is entitled to bring it.  But it is not Kenyon's theory of defense, and Kenyon is entitled to defend itself.

As Plaintiff quotes in his Second Amended Complaint, Kenyon's Title IX Policy on sexual misconduct, consent, and incapacitation negating consent provide:

- "Individuals who choose to engage in sexual activity of any type with each other must first obtain clear consent.  Consent is clear, knowing, and voluntary permission…Consent is demonstrated through mutually understandable words or actions that clearly indicate a willingness to freely engage in sexual activity." (Doc. 27, Second Amended Complaint, ¶ 98(a).)

- "Withdrawal of consent should be outwardly demonstrated by words or actions that clearly indicate a willingness to engage freely in sexual activity." (*Id.* at ¶ 98(b).)

- "Incapacitation – not simply intoxication – negates consent." (*Id.* at ¶ 99(a).)

- "Evaluating Incapacitation requires an assessment of how the individual's consumption of alcohol and/or drugs affects an individual's … [ability to] appreciate *the who, what, where, when, why, or how of a sexual interaction*." (*Id.* at ¶ 99(b) (emphasis added).)

- "Evaluating Incapacitation also requires an assessment of whether a respondent was or should have been aware of the reporting party's Incapacitation based on objectively and reasonably apparent indications of impairment when viewed from the perspective of a sober, reasonable person in the respondent's position." (*Id.* at ¶ 99(c).)

Pertinent to Kenyon's defense, Plaintiff alleges in his Second Amended Complaint, the

following in reference to the time period between 12:15 a.m. to 12:45 a.m. on September 14, 2019:

- "[Jane] claimed John raped her, saying she could not have consented because she had been incapacitated by alcohol and did not remember having sex." (Doc. 27, Second Amended Complaint, ¶ 34.)

- "John has consistently denied, and continues to deny, any sexual or physical misconduct towards Jane." (*Id.* at ¶ 42.)

- "The rape allegations Jane was making were extremely serious, and he had seen her behave vindictively. He therefore decided to exercise his right not to provide further details about the night of September 13/14." (*Id.* at ¶ 43.)

Plaintiff *did* provide conclusory statements about the night of September 14 only after 12:45 a.m. to both investigators and in his Second Amended Complaint, but Plaintiff did not provide details about the time period between 12:45 a.m. and 12:45 a.m.

- "With respect to these findings, the Investigators stated that they accepted Jane's version of events over John's because they found Jane more consistent, credible, and reliable than John." (*Id.* at ¶ 51.)

- "The credibility determinations Kenyon made against John and in favor of Jane were not rationally based on the evidence and not consistent with Kenyon's obligations under the Policy." (*Id.* at ¶ 52.)

This includes the determination by Kenyon's investigators that Plaintiff and Jane had sexual intercourse between 12:15 a.m. and 12:45 a.m. on September 14, 2019 in Plaintiff's apartment.

- "In each of their findings of responsibility, the Investigators' reasoning started with the assumption that Jane was telling the truth…" (*Id.* at ¶ 56.)

- "During the investigation, John gave the Investigators evidence that Jane had sexually harassed, pressured, and coerced him, and indeed, he had been resisting Jane's sexual pressure on the night of September 13." (*Id.* at ¶ 66.)

7

- "Under the Policy, Kenyon was obligated to take John's reports as seriously as they took Jane's, give him the supports and protection they gave her, consider her patterns of behavior, and investigate and resolve his reports just as it did hers." (*Id.* at ¶ 70.)

-  "The Investigators also retaliated against John for exercising his right to defend himself and report Policy violations by Jane."  (*Id.* at ¶ 73.)

- "John submitted a 57-page response to the [Investigators'] Initial Report.  Among other things he: […] Stated, and provided documentary evidence, that Jane had persistently demanded sex and eventually became the sole initiator of sex…" (*Id.* at ¶ 148(b).)

- Kenyon "[f]ailed to probe the inconsistency between Jane's acknowledged and persistent desire to have sex on September 13 and the conclusion that she could not have consented to sex that same night." (*Id.* at 399 (j).)

Essentially, Plaintiff alleges that Kenyon's investigators were wrong about what happened between 12:15 a.m. and 12:45 a.m. on September 14, 2019 when the investigators determined Plaintiff had nonconsensual sex with Jane.

## III.    Law and Argument

### A.    Standard of Review

"Any matter that is relevant, in the sense that it reasonably may lead to the discovery of admissible evidence, and is not privileged, can be discovered. The concept of relevance during discovery is necessarily broader than at trial, *Mellon v. Cooper–Jarrett, Inc.*, 424 F.2d 499 (6th Cir.1970), and '[a] court is not permitted to preclude the discovery of arguably relevant information solely because if the information were introduced at trial, it would be 'speculative' at best.' " *Guinn v. Mount Carmel Health Sys.*, No. 2:09-CV-0226, 2010 WL 2927254, at *3 (S.D. Ohio July 23, 2010) (Kemp, J.) quoting *Coleman v. American Red Cross*, 23 F.3d 1091, 1097 (6th Cir.1994).

Further, "the scope of permissible discovery which can be conducted without leave of court has been narrowed somewhat by the December 1, 2000 amendments to the Federal Rules. Rule

26(b) now permits discovery to be had without leave of court if that discovery "is relevant to the claim or defense of any party ...." *Id.* (internal citations omitted).

"As the United States Court of Appeals for the Sixth Circuit has recognized, '[t]he scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad.' *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)." *Atlas Indus. Contractors LLC v. In2Gro Techs. LLC*, No. 2:19-CV-2705, 2020 WL 1815718, at *4 (S.D. Ohio Apr. 10, 2020) (Vascura, J.) Federal Rule of Civil Procedure 26(b)(1) provides:

> **Scope in General.** Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable.

*Id.* (quoting Fed. R. Civ. P. 26(b)(1).)

The decision and order of a nondispositive motion by the magistrate judge will be upheld unless it is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). Any appeal of or objections to a magistrate judge's order must be made within 14 days of the entry of the order. Fed. R. Civ. 72(a).

In a nondispositive order entered by a magistrate judge, a district judge shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law. Fed. R. Civ. R. 72(a). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States*

*Gypsum Co.*, 333 U.S. 364, 398 (1948); *Hagaman v. Commissioner of Internal Revenue*, 958 F.2d 684, 690 (6th Cir. 1992). Rule 72(a) provides considerable deference to the determinations of the magistrate judge. *In re Search Warrants*, 889 F. Supp. 296, 298 (S.D. Ohio 1995).

Plaintiff did not object to the admission at issue based on privilege, but limited his objection to relevance. Accordingly, the only issue here is whether the admission was relevant to Kenyon's defense.

### B. The August 31, 2021 order is clearly erroneous because it impermissibly limits Kenyon's ability to defend itself against allegations raised by Plaintiff.

To the extent the August 31, 2021 order prevents Kenyon from defending itself against Plaintiff's Title IX erroneous outcome, deliberate indifference, selective enforcement, and contract claims, the order is clearly erroneous. Plaintiff has put at issue that Kenyon's investigators were incorrect about what happened between 12:15 a.m. and 12:45 a.m. on September 14, 2019 in his apartment, including the investigators' determinations that he and Jane had sex. Whether Plaintiff admits to having sex with Jane between 12:15 a.m. and 12:45 a.m. on September 14, 2019, is highly relevant to Kenyon's defenses.

### 1. Relevancy to Kenyon's defense of Plaintiff's Title IX erroneous outcome claim.

Whether Plaintiff admits to having sex with Jane and whether Kenyon can ask Plaintiff questions about the nature of the sexual intercourse with Jane between 12:15 a.m. and 12:45 a.m. on September 14, 2019, is relevant to Kenyon's defense against Plaintiff's erroneous outcome claim. To state a claim under an "erroneous" outcome theory, "a plaintiff must plead: (1) 'facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding' and (2) a 'particularized . . . causal connection between the flawed outcome and gender bias." *Doe v. Cummins*, 662 F. App'x 437, 542 (6th Cir. 2016) (quoting *Yusuf*, 35 F.3d at

715); *see e.g.*, *Doe v. Oberlin College*, 963 F.3d 580, 586 (6th Cir. 2020) (applying the same two-prong framework for erroneous outcome).

Kenyon is entitled to show that, at the very least, the investigators did not reach a flawed or inaccurate outcome or a flawed outcome that was causally connected to gender bias.

Again, as Plaintiff quoted Kenyon's pertinent policy on consent and incapacitation:

- "Evaluating Incapacitation requires an assessment of how the individual's consumption of alcohol and/or drugs affects an individual's … [ability to] appreciate *the who, what, where, when, why, or how of a sexual interaction*." (Doc. 27, Second Amended Complaint, ¶ 99(b)(emphasis added).)

- "Evaluating Incapacitation also requires an assessment of whether a respondent was or should have been aware of the reporting party's Incapacitation based on objectively and reasonably apparent indications of impairment when viewed from the perspective of a sober, reasonable person in the respondent's position." (*Id.* at ¶ 99(c).)

As Plaintiff himself pleaded, he refused to discuss what happened between 12:15 a.m. and 12:45 a.m. on September 14, 2019 in the underlying Title IX investigation. The investigators made the decision Plaintiff now claims is erroneous based upon the interview statements of Jane, witnesses, other evidence in the record, and Plaintiff's written, conclusory statements that Jane was not incapacitated.

As addressed above, Plaintiff did not sit for an interview or answer questions about what happened between 12:15 a.m. and 12:45 a.m. on September 14, 2019. The investigators reached their determination that Plaintiff and Jane had sexual intercourse based upon weighing by a preponderance of the evidence, the interview statements of Jane, witnesses, other evidence, and Plaintiff's written statements. Plaintiff alleges the process and conclusion are incorrect. Kenyon must be allowed to show that its investigators were correct—using the same approach as they used for the rest of their determinations—that Plaintiff did have sex with Jane between 12:15 a.m. and 12:45 a.m. on September 14, 2019.

Moreover, Kenyon must be able to challenge Plaintiff's allegations by asking him what he observed in Jane's ability to "appreciate the who, what, where, when, why, or how of" the sexual intercourse between them during the time period at issue. Kenyon must be allowed to ask him what he was aware of during the sexual intercourse. If Kenyon cannot ask Plaintiff if he had sex with Jane between 12:15 a.m. and 12:45 a.m., Kenyon cannot defend its investigators' determinations and questions Plaintiff about the nature of the sex he and Jane had during that time period. Kenyon also needs to be able to question Plaintiff about his observations of the sexual intercourse he had with Jane between 12:15 a.m. and 12:45 a.m. on September 14, 2019—that he engaged in it, who initiated it, and his observations impacting the finding of incapacitation (*e.g.*, what position Plaintiff and Jane were in such that he could see her face to know she was not incapacitated, who undressed whom, who redressed whom). Plaintiff claims Kenyon got it wrong. Kenyon is entitled to probe his alleged flawed outcome and show Kenyon did not get it wrong.

Kenyon has to be able to question Plaintiff about the sexual intercourse he had with Jane to test his allegations that attempt to cast an "articulable doubt" on Kenyon's Title IX investigation process. Plaintiff attempts to raise an "articulable doubt" that Kenyon's decision was inaccurate because, "With respect to these findings, the Investigators stated that they accepted Jane's version of events over John's because they found Jane more consistent, credible, and reliable than John." (Doc. 27, Second Amended Complaint, ¶ 51.) Plaintiff further alleges, "The credibility determinations Kenyon made against Plaintiff and in favor of Jane were not rationally based on the evidence and not consistent with Kenyon's obligations under the Policy." (*Id.* at ¶ 62.) Finally, Plaintiff alleges, "In each of their findings of responsibility, the Investigators' reasoning started with the assumption that Jane was telling the truth…" (*Id.* at ¶ 56.) Jane provided information in the record that Plaintiff told her they had sex, and that afterwards, she could not find her

undergarments as if someone else had dressed her, and was experiencing non-menstrual vaginal bleeding and pain.  Kenyon is entitled to question Plaintiff about the sexual intercourse he had with Jane to challenge that its investigators were correct to consider Jane's version of events that the sexual intercourse was nonconsensual and were correct and to defend against an "articulable doubt" that the outcome was flawed or bias was causally connected to a flawed outcome.

For these reasons, Kenyon respectfully objects to the August 31, 2021 order to the extent it prevents Kenyon from defending itself against Plaintiff's Title IX erroneous outcome claim.

### 2. Relevancy to Kenyon's defense of Plaintiff's Title IX deliberate indifference and selective enforcement claims.

Whether Plaintiff admits to having sexual intercourse with Jane and Kenyon can ask Plaintiff questions about the nature of the sexual intercourse with Jane during the time period at issue is relevant to Kenyon's defense against Plaintiff's deliberate indifference and selective enforcement claims.

Under a deliberate indifference theory, a plaintiff must "demonstrate that an official of the institution who had authority to institute corrective measures, had actual notice of and was deliberately indifferent to, the misconduct."  *Mallory v. Ohio Univ.*, 76 F. App'x. 634, 638 (6th Cir. 2003).  "To prevail on a 'selective enforcement' claim, the plaintiff must show that a similarly-situated member of the opposite sex was treated more favorably than the plaintiff due to his or her gender." *Doe v. Univ. of Dayton*, 766 F. App'x. 275, 284 (6th Cir. 2019) (quoting *Doe v. Cummins*, 662 F. App'x 437, 452 (6th Cir. 2016)).

Again, Plaintiff has put whether he had sexual intercourse with Jane between 12:15 a.m. and 12:45 a.m. on September 14, 2019 and the nature of that sexual intercourse with Jane at issue and Kenyon must be able to question him about it.  Plaintiff alleges generally that Jane had become

the "sole initiator of sex" in their relationship. (Doc. 27, Second Amended Complaint, ¶ 148(b).) He alleges, "During the investigation, John gave the Investigators evidence that Jane had sexually harassed, pressured, and coerced him, and indeed, he had been resisting Jane's sexual pressure on the night of September 13." (*Id.* at ¶ 66.)  From Plaintiff's Second Amended Complaint and submitted statements in the underlying Title IX investigation, Plaintiff raises this emphasized allegation against Jane not for the time period at issue, but in relation to the time after 12:45 a.m. Further, he alleges, "Under the Policy, Kenyon was obligated to take John's reports as seriously as they took Jane's, give him the supports and protection they gave her, consider her patterns of behavior, and investigate and resolve his reports just as it did hers." (*Id.* at ¶ 70.)

Kenyon must be able to have Plaintiff admit he had sex with Jane and ask him questions about it.  Kenyon must be able to ask him whether Jane initiated the sexual intercourse, whether she was pressuring him during sexual intercourse during the time period at issue or after 12:45 a.m., as he later alleged.  Plaintiff has put this at issue and Kenyon is entitled to question him about his allegations.

### 3.  Relevancy to Kenyon's defense of Plaintiff's breach of contract claims.

Whether Plaintiff admits to having sexual intercourse with Jane and whether Kenyon can ask Plaintiff questions about the nature of the sexual intercourse with Jane between 12:15 a.m. and 12:45 a.m. on September 14, 2019, is relevant to Kenyon's defense against Plaintiff's breach of contract claims.  "Contracts for private education have unique qualities and must be construed to allow the institution's governing body to meet its educational and doctrinal responsibilities." *Valente v. Univ. of Dayton*, 438 Fed. Appx. 381, 384 (6th Cir. 2011) (quoting *Ray v. Wilmington Coll.*, 667 N.E.2d 39, 42 (Ohio App. 1995).)  "Courts therefore will not interfere with a private

14

university's right to make regulations, establish requirements…and enforce disciplinary rules absent a clear abuse of discretion." *Id.*

In relation to his contract claims, Plaintiff alleges that Kenyon breached its contract with him when Kenyon "[f]ailed to probe the inconsistency between Jane's acknowledged and persistent desire to have sex on September 13 and the conclusion that she could not have consented to sex that same night." (Doc. 27, Second Amended Complaint, ¶ 399 (j).) Kenyon is entitled to question Plaintiff about the sexual intercourse he had with Jane between 12:15 a.m. and 12:45 a.m. on September 14, 2019, to probe Plaintiff's observations to whether she consented (or could consent) to sex, to show that Kenyon did not abuse its discretion in concluding that Jane could not have consented. Again, Plaintiff must be required to admit whether he had sexual intercourse with Jane between 12:15 a.m. and 12:45 a.m. on September 14, 2019 so Kenyon can question him about the nature of the sexual intercourse that he has put squarely at issue in this litigation.

Accordingly, Kenyon respectfully objects to the August 31, 2021 order to the extent it determined that Plaintiff admitting to having sex with Jane between 12:15 a.m. and 12:45 a.m. on September 14, 2019 was not relevant to this litigation.

## IV.    Conclusion

For the foregoing reasons, Defendant Kenyon College respectfully asks this Court to modify the August 31, 2021 order to allow Defendant to defend itself against live claims raised by Plaintiff in his Second Amended Complaint.

16929516v4

Respectfully submitted,

/s/ *Erin E. Butcher*

JOSHUA D. NOLAN* (0084592)
  *Trial Attorney*
Bricker & Eckler LLP
1001 Lakeside Avenue E.
Cleveland, Ohio 44114
(216) 523-5405
(216) 523-7071 (facsimile)
jnolan@bricker.com

ERIN E. BUTCHER (0087278)
Bricker & Eckler LLP
100 S. Third Street
Columbus, Ohio 43215
(614) 227-2303
(614) 227-7714
(614) 227-2390 (facsimile)
ebutcher@bricker.com

16929516v4

## CERTIFICATE OF SERVICE

      This will certify that the foregoing *Defendant Kenyon College's Objections to Order* was filed electronically on September 14, 2021.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

                /s/ *Erin E. Butcher*
                ERIN E. BUTCHER (0087278)

16929516v4